## McCandless Township Petition

*Robert Van der Voort*, township solicitor, for petitioner.

*John P. Hester*, borough solicitor, for respondents.

ADAMS, J., July 1, 1952.—Millvale Borough and Shaler Township (first class) obtained a rule to show cause why the petition of the second class Township

of McCandless (under section 36 of the Act of July 10, 1947, P. L. 1481, 53 PS §19093-1530) for a hearing on the matter of connecting a sewer in McCandless Township with an existing sewer in the adjacent first class Township of Ross should not be dismissed.

This matter was previously before this court when McCandless petitioned for a hearing under the act but failed to aver that Ross had agreed to this connection. The petition was dismissed because "the act relating to second-class townships authorizes an application to the court only when the municipalities have agreed to the connection." The petition now under consideration avers that McCandless and Ross have agreed to the connection. A copy of that agreement is attached to the petition.

Millvale and Shaler now aver that the court may not entertain the proceeding and point to (1) the terms of the statute which requires that the municipalities owning the respective sewers agree to the connection, and (2) the facts as set forth in the petition that the Ross sewer connects (within Ross Township) into the Girty's Run joint trunk sewer; that the trunk sewer was jointly constructed and is jointly maintained by Ross, Shaler, Millvale and West View Borough and passes through each of them into the river in Millvale; that Shaler, Millvale and West View have not agreed to the proposed connection.

Under the 1947 Act, a second class township "may, by agreement, connect with an existing sewer owned by any adjacent municipality, for sewage purposes" in a manner established in the act. A petition reciting the agreement may be presented to the court of quarter sessions which shall, among other things, determine whether the proposed connection "can be made without impairing the usefulness of the existing sewer". The sole matter before the court at this time is the

question whether or not Shaler, Millvale and West View are "adjacent" municipalities who own an "existing sewer" within the meaning of this act.

It is apparent from the terms of the agreement between Ross and McCandless Townships that the proposed connection is to be made "to the sanitary sewer of Ross which is located in and has an entry in (or terminus in)" the portion of McCandless Township to be served. In the absence of clear authority to the contrary only the agreement of Ross Township, the "adjacent municipality," need be established.

Millvale and Shaler contend that under the terms of a 1932 agreement they, like Ross (and West View), are owners of the trunk sewer which will be burdened by the proposed connection and as such must consent to the proposed connection before this court may properly receive this petition. Of course it is obvious that Millvale and West View and, perhaps, Shaler are not "adjacent" to McCandless and, not being so located, do not fall within the language of the 1947 Act. There are other considerations which compel the conclusion that neither Shaler, Millvale nor West View need consent to the proposed connection.

The fact that Ross Township is party to a 1932 agreement with Millvale, Shaler and West View for the joint construction and maintenance of a joint trunk sewer does not require an extension of the statute so as to compel McCandless to obtain the consent of the other three parties to that agreement. Legislation authorizing the joint construction and maintenance of sewers by various political subdivisions, and legislation permitting or requiring connection of a sewer of one political subdivision to that of another have existed side by side for many years. The court has been directed to no provision in this legislation nor to any decided case in which it has been suggested that the

joint construction or maintenance of a sewer by any group of political subdivisions has the effect of modifying the procedure by which a nonparticipating political subdivision may connect to the sewers of an adjacent participating municipality. In the absence of any such authority it must be concluded that McCandless need only obtain the consent of Ross in order to proceed with its petition.

It is important to note that legislation existing before and subsequent to the date of the Ross, West View, Shaler, Millvale agreement would have permitted the construction, connection and joint maintenance of a trunk sewer system substantially the same as that now existing *without the agreement of any two of them.* This could have been accomplished by petitions to the court of quarter sessions which would have determined whether or not each connection would overburden the receiving sewer and would have apportioned expenses. Shaler could have connected to Millvale without the consent of Millvale under the authority of section 2435 of the Act of June 24, 1931, P. L. 1206, as reënacted, 53 PS §19092-2435. Under the same statutory authority Ross could have connected to Shaler without the consent of the latter. West View could have connected to Ross without the consent of Ross under sections 2122-2125 of the Act of May 4, 1927, P. L. 519, as amended, 53 PS §14303-14306. This observation is made to emphasize that the agreement entered into in 1932 has absolutely no bearing on the connection of a McChandless sewer to a Ross sewer. Agreements of this sort facilitate the economical movement of sewage. Without such agreements, involuntary connections and/or rights of way across adjoining municipalities would serve the same end.

As was said in Darby Township v. Collingdale Borough, 74 D. & C. 238, 239:

"There are few inter-municipal relationships in which greater cooperation is usually exhibited than in agreements to carry sewage of adjoining municipalities, and this court cannot be affected by opposition to progress or sensible relationship between municipalities without substantial and compelling reasons, which do not here appear. It is the history of the growth of communities, that cities, townships, towns and boroughs must cooperate in sewage problems common to all. It is difficult to comprehend that the law will tolerate one municapility prohibiting another from using its sewer system. Municipal comity does not function that way. We emphasize, however, that when a municipality desires to connect with another one, the one desiring the connection must accomplish it on fair and equitable terms, and bear its proportionate part of the original cost and maintenance."

Similarly in this case, in the absence of any reason to the contrary the court will not interpret the establishment of a joint sewer agreement among four municipalities as a termination or modification of the authority of a participating municipality, Ross, and a stranger to the agreement, McCandless, to approach and overcome a sanitation problem common to the two of them. Of course West View, Shaler, and Millvale are entitled to be heard before this court on the merits of the question of whether or not the proposed connection will overburden the trunk sewer which is part of the "existing sewer" of these three parties as well as of Ross. Should this court approve the proposed connection, West View, Shaler and Millvale as well as Ross and McCandless will be given full consideration in the apportionment of cost and expenses.

We conclude, therefore, that the rule should be dismissed, and that a date for hearing should be set on petition of any of the parties.